UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

Eastern District of Kentucky
FILED
MAY 03 2024
AT LEXINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

UNITED STATES OF AMERICA

V.

INDICTMENT NO. 5:24-CR-44-KKC-EBA

ELIOMAR SEGURA TORRES,
   aka "HELIO,"
   aka "ELIO,"
JUAN CARLOS MICHEL MARTINEZ,
   aka "J.C.,"
MANUEL IGNACIO CORREA,
   aka "THE ARGENTINIAN,"

[REDACTED]

DANIEL GORDIANO VALENZUELA

\* \* \* \* \*

THE GRAND JURY CHARGES:

## INTRODUCTION

1. The United States is one of the world's largest and most lucrative markets in which to distribute controlled substances, including, but not limited to, fentanyl, cocaine, methamphetamine, and heroin.

2. Drug trafficking organizations (DTOs), including the Cartel de Jalisco Nueva Generación (CJNG), smuggle large quantities of fentanyl, cocaine, methamphetamine, and heroin into the United States. These drugs are sold in cities and towns across the United

Case: 5:24-cr-00044-KKC-MAS *SEALED* Doc #: 1 Filed: 05/03/24 Page: 2 of 12 - Page ID#: 2

States almost exclusively for cash. The bulk cash accumulates and generates enormous illicit profits.

3. For this criminal business to continue and achieve its purpose, it is necessary for this money to be repatriated to the foreign drug trafficking organization that manufactured and smuggled the fentanyl, cocaine, methamphetamine, and heroin into the United States. However, because this money is the proceeds of a "specified unlawful activity," *i.e.*, proceeds from the distribution of controlled substances, special care and skill must be taken to transact it to avoid detection by law enforcement.

4. Traditionally, drug trafficking organizations, including the CJNG, relied on shipments of this bulk cash from the United States, where the drugs were sold, back to Mexico, where the traffickers lived. This method involved both risk of seizure by law enforcement and the impracticalities of transferring substantial quantities of paper currency that is difficult to move, store, and protect. Drug trafficking organizations also divided narcotic proceeds into smaller amounts and transmitted the funds through money service businesses to Mexico or deposited the money into bank accounts for transfer. However, advances in anti-money laundering statutes and laws by governments around the world have made simply depositing this cash into the international banking system substantially more challenging for traffickers, due to the increased risk of detection.

5. In light of these challenges, drug trafficking organizations, including the CJNG, have developed other means of moving fentanyl, cocaine, methamphetamine, and heroin proceeds from the United States back to Mexico – in particular, by utilizing cryptocurrency and bank wire transfers. Common cryptocurrency platforms include

Binance, a cryptocurrency exchange; that is, a business that allows customers to trade various cryptocurrencies for other digital currencies or for fiat money. The digital assets (cryptocurrencies) utilized by the DTOs are numerous but include Bitcoin (BTC) and USD Coin (USDC).

6. The drug trafficking organizations have hired a network of professional money launderers i.e., "money brokers," to undertake the laundering of its narcotic proceeds. These Guadalajara and Mexico City-based money brokers work for a "commission," or a percentage of the money laundered on each "contract." This scheme incentivizes money brokers to obtain and fulfill as many "contracts" as possible. It follows that these money brokers, along with their co-conspirators, rely on and seek to further the continued success of the narcotics trade in the United States.

7. For purposes of this Indictment, a "contract" is an agreement to obtain money that is proceeds of specified unlawful activity that is already in the United States and to conduct financial transactions with that money so it, or its equivalent value, can be provided to individuals and groups in Mexico whose drug trafficking activities generated it. Relatedly, a "commission" is a percentage of the money paid to brokers who are involved in the transaction.

## THE SCHEME

8. A drug trafficking organization, such as CJNG, will offer a contract to the Mexico-based money brokers to pick-up drug proceeds (often referred to as "bulk currency") in a specified U.S. city, such as Lexington, Kentucky; Chicago, Illinois; Atlanta, Georgia, Cincinnati, Ohio, Toledo, Ohio; Birmingham, Alabama; or St. Louis, Missouri.

The contract may be offered to multiple money brokers. The broker will then see if his network of conspirators in the United States can effectuate the pick-up.

9. When the Mexico-based money broker accepts the contract from a drug trafficking organization (DTO), such as the CJNG, he obtains a telephone number for an individual (often referred to as a courier) who will pick up the bulk cash in the U.S. The broker provides the phone number and pre-arranged verification code to the drug trafficking organization's representative in Mexico. The verification code is often the serial number from a one-dollar bill and is referred to as a "bill code" or a "token." The Mexico-based drug trafficking organization passes this information to its U.S. affiliates and the delivery of the bulk cash is arranged by the network of conspirators.

10. The U.S. affiliates meet the money broker's representative/courier in various public locations, including parking lots and hotels, to deliver the bulk cash. To verify the identity of the broker's U.S. representative, the U.S. affiliate of the Mexico-based drug trafficking organization requests to see the bill code or token prior to conducting the transaction. Once verified, the U.S. affiliate of the Mexico-based drug trafficking organization passes the bulk currency to the broker's U.S. representative.

11. After collection of the bulk cash, the Mexico-based money broker directs that the money be wired to a specified bank account or cryptocurrency wallet. The illicit proceeds may pass through several bank accounts or cryptocurrency wallets. The money may be "off ramped" (exchanged for fiat currency) in Mexico, as profits of the drug trade, as well as reinvested to purchase additional narcotics and to fund the DTO's operations.

12. The defendants, **ELIOMAR SEGURA TORRES** aka "HELIO," aka "ELIO," **JUAN CARLOS MICHEL MARTINEZ** aka "J.C.," **MANUEL CORREA,** aka "THE AREGENTINIAN," ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **DANIEL GORDIANO VALENZUELA,** serve as money brokers for drug trafficking organizations, including the CJNG, to launder their fentanyl, cocaine, methamphetamine, and heroin proceeds, to enable the drug trafficking organizations to reap the massive profits from its drug sales in the United States while avoiding detection, and in return receiving a commission from the proceeds for their efforts.

## COUNT ONE
## 18 U.S.C. § 1956(h)
### [Money Laundering Conspiracy]

The above allegations at paragraphs 1 through 12 are incorporated herein by reference.

From in or around 2021, the exact date unknown, and continuing through on or about May 3, 2024, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

**ELIOMAR SEGURA TORRES,**
aka "HELIO,"
aka "ELIO,"
**JUAN CARLOS MICHEL MARTINEZ,**
aka "J.C.,"
**MANUEL CORREA,**
aka "THE ARGENTINIAN,"
▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮
**DANIEL GORDIANO VALENZUELA,**

Case: 5:24-cr-00044-KKC-MAS *SEALED*   Doc #: 1   Filed: 05/03/24   Page: 6 of 12 - Page ID#: 6

and others, did knowingly conspire and agree to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, that is, concealment money laundering, by knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of a specified unlawful activity; that is, to possess with the intent to distribute and to distribute a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A), and conspiracy to do so, in violation of Title 21, United States Code, Section 846, knowing that the transactions were designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity; and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), all in violation of Title 18, United States Code, Section 1956(h).

### COUNT TWO
### 18 U.S.C. § 1956(a)(1)(B)(i)
### [Concealment Money Laundering]

The above allegations at paragraphs 1 through 12 are incorporated herein by reference.

From on or about May 11, 2021, and continuing through on or about May 12, 2021, in Fayette County, in the Eastern District of Kentucky, and elsewhere,



did knowingly conduct and attempt to conduct a financial transaction affecting interstate

and foreign commerce, to wit, the delivery of approximately $206,090 in bulk cash and its subsequent wiring, minus commissions, to specified bank account Tomorrow Good Limited Acct. *9825 at Signature Bank, which involved the proceeds of a specified unlawful activity, that is, to possess with the intent to distribute and to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to do so, in violation of Title 21, United States Code, Section 846, knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity; and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, all in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## COUNT THREE
### 18 U.S.C. § 1956(a)(1)(B)(i)
### [Concealment Money Laundering]

The above allegations at paragraphs 1 through 12 are incorporated herein by reference.

From on or about August 15, 2022, and continuing through on or about August 18, 2022, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

**JUAN CARLOS MICHEL MARTINEZ,**
**aka "J.C.," and**
**MANUEL CORREA,**
**aka "THE ARGENTINIAN,"**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, the delivery of $195,010 in bulk cash, which was

subsequently converted to cryptocurrency (U.S.D. Tether) and wiring, minus commissions, to a specified wallet, which involved the proceeds of a specified unlawful activity, that is, to possess with the intent to distribute and to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to do so, in violation of Title 21, United States Code, Section 846, knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity; and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, all in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## COUNT FOUR
## 18 U.S.C. § 1956(a)(1)(B)(i)
### [Concealment Money Laundering]

The above allegations at paragraphs 1 through 12 are incorporated herein by reference.

From on or about January 13, 2023, and continuing through on or about January 20, 2023, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

**JUAN CARLOS MICHEL MARTINEZ,**
**aka "J.C.," and**
**MANUEL CORREA,**
**aka "THE ARGENTINIAN,"**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, the delivery of $244,460 in bulk cash, which was subsequently converted to cryptocurrency (U.S.D. Coin) and wiring, minus commissions, to a specified wallet, which involved the proceeds of a specified unlawful activity, that is, to possess with the intent to distribute and to distribute a controlled substance, in

violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to do so, in violation of Title 21, United States Code, Section 846, knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity; and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, all in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## COUNT FIVE
## 18 U.S.C. § 1956(a)(1)(B)(i)
## [Concealment Money Laundering]

The above allegations at paragraphs 1 through 12 are incorporated herein by reference.

From on or about April 19, 2023, and continuing through on or about April 25, 2023, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

**MANUEL CORREA,**
**aka "THE ARGENTINIAN,"**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, the delivery of $149,705 in bulk cash, which was subsequently converted to cryptocurrency (U.S.D. Coin) and wiring, minus commissions, to a specified wallet, which involved the proceeds of a specified unlawful activity, that is, to possess with the intent to distribute and to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to do so, in violation of Title 21, United States Code, Section 846, knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and

control of the proceeds of said specified unlawful activity; and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, all in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### FORFEITURE ALLEGATION
### 21 U.S.C. § 853
### 18 U.S.C. § 982(a)(1)

1. The above allegations are incorporated herein for the purpose of alleging Forfeiture.

2. By virtue of the commission of the felony offenses alleged in Counts 1-5 of the Indictment, **ELIOMAR SEGURA TORRES, aka "HELIO," aka "ELIO,"  JUAN CARLOS MICHEL MARTINEZ, aka "J.C.," MANUEL CORREA, aka "The Argentinian,"** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and **DANIEL GORDIANO VALENZUELA**, shall forfeit to the United States any property involved in the violations of 18 U.S.C. §§ 1956 and/or 1957 and any property traceable to such property. Any and all interest that the above listed defendants have in this property is vested in and forfeited to the United States pursuant to 18 U.S.C. § 982(a)(1).

3. The property to be forfeited includes, but is not limited to, the following:

### MONEY JUDGMENT:

> A forfeiture money judgment in the amount involved in the violations alleged in this indictment, which is at least $20 million dollars.

**CURRENCY:**

All funds on deposit in Chase Account #936001202, in the name of Orbe Betech, LLC.

4. If any of the property listed above, as a result of any act or omission of the Defendant(s), (A) cannot be located upon the exercise of due diligence; (B) has been transferred or sold to, or deposited with, a third party; (C) has been placed beyond the jurisdiction of the court; (D) has been substantially diminished in value; or (E) has been commingled with other property which cannot be divided without difficulty, the United States shall be entitled to forfeit substitute property pursuant to 21 U.S.C. § 853(p).

**A TRUE BILL**

███████████████

FOREPERSON

_/s/ Carlton S. Shier_

**CARLTON S. SHIER IV**
**UNITED STATES ATTORNEY**

## PENALTIES

**COUNTS 1-5:**

Imprisonment for not more than 20 years, a fine of not more than $500,000, or twice the value of the property involved in the transaction, whichever is greater, and a term of supervised release of not more than 3 years.

**PLUS:**     Mandatory special assessment of $100 per Count.

**PLUS:**     Forfeiture / money judgment as listed.

**PLUS:**     Restitution, if applicable.